you meant this week. We have three appeals to hear this morning. We're familiar with your cases. We've read your briefs, the authority cited in your briefs and at least portions of the record. So in the limited time that is available to you, you should feel free to go straight to the heart of your argument. You're not going to waive anything if you're not able to address something that's in your brief. But hit the high points that you want to make sure that we know about before we are finished. If you're answering a question from the court, of course, finish your answer if your time has expired. But please do not treat the red light as aspirational. Respect the red light for us and we'll get started. United States v. Is it Umbach? Yes, Mr. Dotson, please come forward. Good morning and may it please the court. My name is Jonathan Dotson and I am representing Robert Wade Umbach. I raised two issues in my briefs. My plan today is to focus on the sufficiency of the evidence. The government alleged that Wiley Griffin hit Aaron Parrish in the face with a flashlight multiple times. It alleged that Mr. Umbach knew that Griffin hit Parrish and that he told the FBI that it did not happen. But there was no evidence that Mr. Umbach saw Griffin hit Parrish, knew that Griffin hit Parrish, or believed that Griffin hit Parrish. There was no evidence that he saw, knew, or believed anything contrary to what he told FBI agent McDermott. Police officers make sworn statements, testify under oath every day, and sometimes lack absolute knowledge or recall of every detail. Sometimes they've come to the wrong conclusion, but that kind of mistake is a long way from being intentionally misleading. Mr. Umbach appropriately qualified his statements by putting them in terms of what I could see, what I didn't see, to my knowledge, and what he believed. He said he didn't see Griffin go for his gun. He didn't see Parrish go for his gun. He said more than that, though, didn't he? He said, he was asked, was he not, whether it would, well, I guess Kynes is, was asked whether it would stick out in his mind if he were holding Parrish and somebody is hitting Parrish with a flashlight. Kynes responded that he would. I would have remembered that. Your client said he didn't see Griffin hit Parrish in the face. He would have seen it had it happened because he was right at Parrish's head. They're both testifying to that, and there's ample evidence from other witnesses and from the injuries that were sustained that it in fact happened. Isn't that right? There is evidence that some Parrish, and he did say, Mr. Umbach said he would have seen it, that he was right. There's evidence that he was struck with a flashlight in the face, right? There was, there was evidence that, that, that, yes, people, three witnesses testified to that fact. And, and, and he, and they both testified that if that had happened, they would have seen it. Isn't that right? Mr. Umbach made, they said that to the investigators. Correct. He made that statement to the FBI. That highlights, however, that he's speaking hypothetically, and I think that highlights that he, that he didn't see it. But it's really, well, I mean, how could he not have seen it? He's there. He's in the middle of the fight. He's right next to him. He says with quote, 100% certainty, unquote, that Griffin did not strike Parrish. I mean, he's testifying, he's testifying with complete certainty that the opposite of what happened actually happened, and he is in the thick of it. And there are multiple witnesses who testify about Griffin having hit Parrish with the flashlight. I, I would respectfully say that the, the word certainty wasn't used. If, if you were, if you listened to the exhibit, he said 100% just to my knowledge that Griffin didn't hit Parrish. And, and the testimony, I mean, why was the jury not entitled to find that that was intended to mislead the agent? Because there wasn't evidence that he did know or see that that happened. It came from him. He would, he said if it had happened, he would have seen it. And they can believe that portion and discredit the other portion. Isn't that right? Well, his statements were the actus reus. And even if his statement, I would have seen it, was incredible. Even if he was overestimating his abilities. That's the credible way. Well, if it had happened, I would have seen it. We believe that. We believe that. The jury could say we believe that. And then, then he says, I didn't see it. Oh, no, we don't believe that. In which case it's intentionally misleading, right? I would argue he, anyone can overestimate their abilities in hindsight. That's a nice jury argument. We're here on a different form of review. I understand. The testimony describing the incident, it wasn't enough to describe just that the strikes happened. It described Mr. Umbach laying on one side of this dog pile with Mr. Kynes on Mr. Parrish's back, holding him in a headlight. Mr. Kynes was 300 pounds. And Mr. Nix testified Mr. Griffin approached from the opposite side. So, Mr. Umbach is at ground level and Mr. Kynes is on Mr. Parrish's back. He wouldn't have had a line of sight to that. He said he would have seen it. But again, he's speaking hypothetically. And that could only be intentionally misleading with some other evidence that he did, in fact, see it, other than his overestimation that he would have seen it. I thought we both agreed at some time earlier that there's evidence that it happened. There's evidence that it happened. There's not evidence that he saw it. Other than his own testimony that he was in a position to see it if it happened. And he would have seen it had it happened. And again, I would argue that's not an assertion of personal knowledge that he would have. That's hypothetical reconstructing of what happened. The threat of his... It's not hypothetical if the jury believes that it did. We both agree there's evidence from which the jury could infer that it, in fact, happened. Right? I would not agree that that's a reasonable inference for the jury to make. That the beating did not... That he saw the beating happen or knew that it happened. Okay. I think we understand your argument. You've saved a couple of minutes for rebuttal, Mr. Dodson. With that, I just ask that this court reverse his conviction or alternatively remand for resentencing without the abuse of trust enhancement. Thank you. Mr. Durow. Good morning. May it please the court. My name is Kermit Durow and I appear this morning on behalf of Christopher Kynes who appeals from his conviction of the offense of tampering with a witness in the sentence imposed thereof. You've made one argument that I'd like for you to address, but I want you to know I think you raise a fair point that you were entitled to bring... Use the pleadings from the other case as prior inconsistent statements for impeachment purposes. But my concern is that there's... That any error is prior is the defendants put on a joint defense and certainly you could take the position that the government seems to take in their reply brief that, well, the jury didn't believe Mr. Nix and his account that was a flashlight, but the jury convicted these two deputies of making misrepresentations to an FBI agent. But everything is indestructibly linked and if I could... What it is that you would have showed through impeachment with those prior inconsistent statements that was really... That was important. Yes, sir. Basically, Your Honor, Mr. Parrish's account in his pleadings, which Judge Sands says are not verified, but of course federal rule of procedure 11 says you make a representation in good faith when it's in pleading. It doesn't have to be representations. But also, Your Honor, we cite the case from Harris, the Ninth Circuit. How much money was he suing for? What claims was he making? But that particular... It seems to me that that case is distinguishable and here's the reason why. In that case, there was an estate that was at issue. There was a question about how much money she was going to get. She was going to get pretty much nothing in one circumstance and in the other circumstance, she would get a lot of money. Here, it's clear from the record that he was suing and it's clear from the record that the nature of the injuries would have allowed him to sue for a tremendous amount of money. So, I mean... Well, I would... So that seems distinguishable to me. I would respectfully take issue with that. The fact is he had a follow-up appointment which he didn't maintain with the doctor. I'm not saying he would have won. Yes, ma'am. But the issue that you raise is that he sued for a and that goes to his bias. Well, the jury knew that he had sued and the jury certainly could have inferred that it was for a lot of money based on the nature of the injuries that he suffered. I don't... I would respectfully take issue with that, Judge Rosen. Well, tell me this. I thought on that point that the cross-examination actually had yielded an admission that it was for a substantial amount of money. I'm not... Am I not right about that? No, sir. I think Judge Sands let me know that you've gone far enough and there's not going to be anything more to question. But if I could... Was there not some testimony at trial that there had been a lawsuit for money damage? Yes, sir. But not a figure or not anything like that. If I could, I would like to talk about our challenge to the court's ruling, which allowed Chip Nix to testify that he overheard the sheriff state when questioned by a deputy, well, do you want his name being Little Wiley, the son's in or out? And Mr. Nix contended, the sheriff said, I'd rather it be left out. This is clearly a violation of 801 D2E. And if I could respectfully show the court, there has not been one reported case from this court in which a statement was allowed under this exception to the hearsay rule where the defendants were not charged in a conspiracy. Well, it was for the... As I understand it, it was admitted for the effect on Nix. That is why it was that he did not mention Griffin IV originally and then that he later did. It was admitted, the government proffered that because his name was not in Ms. Crowley's report, it explained conduct. However, the government called a witness in rebuttal to testify that Mr. Nix had told him that same thing before. And if it's admitted for the purposes of conduct... It doesn't seem to me that it's hearsay. It's not introduced to prove the truth of the matter asserted. Okay. Well, it's not introduced to prove the sheriff's preferences, is it? It absolutely does, Judge Pryor. If you look at our reply... You were trying to... They were trying to prove the sheriff's preferences? Yes, sir. The government twice in the closing argument makes statements regarding the state the sheriff told him not to put it in the record. Is that... Yes, but is that being proved to... Is that being offered to prove that's true? Absolutely and unequivocally and likewise, the government called a witness in rebuttal and had that witness testify that Mr. Nix had told him this before for the purpose, the stated purpose of rehabilitating... That was a prior consistent statement. Of rehabilitating the witness. It was introduced to prove the motive, was it not, to omit Griffin's name from the report. Isn't that right? No, sir. It was the foundation, as we say in our brief, that tied these deputies to the sheriff and it substantiated this unalleged but intimated assertion that there was some broad conspiracy to perfect the sheriff's son, which in case was not true. Thank you. Okay, thank you. You say... Please. I just want to make sure. Now, your client is serving his sentence, right? No, ma'am. Okay, so are they both out? Yes, ma'am. Okay, I didn't understand that from the record. That's why. Okay, thank you. So, you have saved two minutes for rebuttal, Mr. Dorough. Thank you, Mr. Pryor. Yes, Ms. Porcaccini. Thank you, your honors. May it please the court, Francesca Porcaccini on behalf of the United States. Your honors, there is more than sufficient evidence to uphold the defendant's convictions in this case and the district court did not commit any errors, whether evidentiary or instructing the jury that warrant a reversal of defendant's convictions. Just to be clear, you're in agreement that it needs to be remanded for resentencing, right? We are. Okay. Yes, we agree that a remand is appropriate in this case. I'm happy to start with the sufficiency argument, if the court would like. There was... You know what, while we're talking about the sentencing issue, I mean, it's not your position that these gentlemen didn't hold positions of trust. You acknowledge that being a police officer is a position of trust or sheriff. It's just that that position didn't facilitate the crime. That's absolutely right, Judge Martin. Yes, we maintain that police officers always maintain a position of trust under this court's case law, but they did not misuse that position when in furtherance of the crime of conviction. That's why the enhancement is not Aaron Parrish in the face and then lie to the FBI about Mr. Griffin. Is it sufficient for us to say that their testimony, that if it had happened, they would have seen it? It's enough to establish that? It is enough, and there's more evidence besides that, which is why the sufficiency argument... Well, the eyewitness testimony and everything else that would corroborate that. But at the end of the day, if we're left with an argument from them that the problem with the evidence, the problem with the proof is that there's not really evidence that they saw it. Their own testimony was that if it had happened, they would have seen it, and we know it did happen, and there's a lot of witness testimony that it happened, right? That's exactly right. And this court has already addressed that situation in U.S. v. Rhonda, where the court confirmed that a defendant's belief testimony is not... There's sufficient evidence when the defendant's belief testimony is both wrong in fact, and there's circumstantial evidence of an intent to mislead or motive to mislead or that they actually did mislead. And that is what we have here, along with all the other circumstantial and direct evidence of their ability to see Mr. Griffin's involvement and then their false statements to the contrary. It does seem to me those pleadings were prior and consistent statements that would have been permissible to use for impeachment, but I'm not sure that there was prejudice. Yes. Your Honor is referring to Aaron Parrish's civil complaint. So first, I agree. The bias was fully explored on cross-examination, and so it seems as though... How? So first, the government elicited the fact that the suit existed, and then defense was able to elicit the fact that the suit was against the Sheriff's Office, as well as against all four defendants individually, and that the suit was for money damages. Now, the suit itself actually does not... What about the differences? And as I understand it, Kahns argues that he was not able to elicit the differences in the victim's account of how this event occurred in his testimony versus what had been alleged in his civil complaint. What about that? So there was only... The district court only limited... It was a very narrow limit on what could be excluded here, and that was to impeach Mr. Parrish's statements at trial against the factual allegations in the complaint. Why couldn't... I mean, it seems to me they were entitled to cross-examine him about that, to try to impeach him about that. That would be true if they were indeed his own statements, but the judge had no basis... That lawyer works for him. He's his agent. It seems to me those are his statements. Am I not right about that? So Rule 613B makes no provision, whether expressed or implied, for the attribution of another person's statements to a witness. And this court has said that as well in U.S. v. Saget, which we cite in our brief on page 36. This court did say that 613B does not permit third-party statements to be attributed to a witness. The rest of the federal rules of evidence clearly recognize, do they not, that a pleading followed by a witness's attorney is a prior statement of the witness. There are other federal rules of evidence that recognize that, right? As a general matter, that may be true under other rules of evidence, but these statements... Was there any reason to think that the meaning of the word statement in Rule 613 is different from the meaning of the word statement in, say, Rule 801? I believe so because I believe... Not defined? I believe though in 801 there is an express provision that allows for the statements of attorneys to be attributed to their clients. Made by a person whom the party authorized to make a statement on the subject or made by the party's agent or employee on a matter within the scope of the relationship and while it existed, right? And that is absent from 613, but I... Is there any reason to think that the meaning of the word statement in 613 would be any different from that? I would say yes. It is axiomatic that a witness's statements must be his own statements to come in as prior inconsistent statements. It would violate the truth-seeking function of cross to... I mean, this is just for impeachment purposes. Even if Your Honor is correct about that, I mean, I believe we think there is a distinction, but Your Honor is absolutely right that the point of bringing in this limited testimony about the factual allegations in the complaint is to probe for bias, and that was very much explored on cross-examination of Mr. Parrish. And I would just say that the suit itself does not actually seek a certain amount of money damages, so the argument that they weren't allowed to explore that the suit was for money damages is not exactly accurate. The suit was for an amount to be determined by fair and impartial jurors, and that was able to come out. So any... The fact of the civil suit, the fact that it was for money damages, the fact that it could have biased Mr. Parrish's testimony was all extensively explored by defense counsels. Would it be fair to say that there weren't any allegations in the complaint that bore on the issue of whether Mr. Umbach and Mr. Kynes actually were aware of and saw Mr. Griffin hit Mr. Parrish? That's correct. None of... When reading the civil complaint, none of the factual allegations there have any bearing on the defendant's subsequent conduct in misleading the FBI, which is the sole count of conviction on appeal right now. I'll lastly just say on this issue that the district court, of course, has wide discretion on evidentiary matters, and it did feel that probing these specific factual allegations in a similar... In a suit arising out of the same events with different standards of proof could unnecessarily confuse the jury, and that that is within the district court's wide discretion there. The court would like me to address any other particular issues? Well, those really are the only issues that your adversary's raised. If you want to give them the opportunity to rebut something that you'll never have the opportunity to say something about, you can. I will just say that all of the evidentiary issues that are raised are... You're now opening up the opportunity for them. I think they would take it anyways, Your Honor. You apparently haven't been to an oral argument where I preside. Not yet. I haven't had the pleasure. My subtlety is more about trying to save the court's time than anything. I couldn't agree more. With that, I will rest on the briefs. We ask that you affirm the convictions in this case and remand for resentencing. Thank you. Thank you. Mr. Johnson. Thank you. I want to contrast the case United States v. Veal, where this court affirmed misleading conduct convictions of some police officers who had covered up beating a man to death. The evidence in that case was what was lacking here. It wasn't enough that the beating actually happened, and there was plenty of evidence of that, but they said they didn't know how this man got his injuries that happened before they arrived. If that was the only evidence, perhaps they would have been found not guilty, but there was blood spatter analysis that showed each of these officers kicked the man in the face, so that was concrete evidence. But this is a case where your client was there. This is a case where my client was there, but the analogy is that— And your client had told the investigator, if it had happened, I would have seen it. I was right there on top of it. He said, I would have seen it, and he's overestimating his prior abilities. The evidence—it wasn't an assertion of personal knowledge. Jury could infer otherwise, right? A jury could reasonably infer. My argument is, no, the jury couldn't—that wouldn't be a reasonable inference. Couldn't reasonably credit his own statement that he would have seen it. That would have been unreasonable for the jury to credit your client's own statement. Because it wasn't an assertion of personal knowledge, so even if they believed it was true— He was certain. I would have seen it, given my vantage point. And throughout his statements, he continues to qualify. The FBI agent asked him that a number of times. At one point he said, I would have seen it, plus Kynes was taking up most of the upper body. So he was deducing—he was reconstructing this altercation in hindsight. And so the jury—you know, it wasn't an assertion of personal knowledge, and the jury was entitled to take it for what it was, which was a hypothetical. I think we understand your argument, Mr. Dodson. Thank you. I'm asking you to reverse his conviction. Mr. Dura. Your Honor, if I could respectfully just draw the Court's attention to three instances which belie the government's representation that this hearsay evidence was submitted not for the truth of the matter. Twice in the government's closing argument, the government refers to the statement that Sheriff Griffin allegedly made. And again, in rebuttal, a witness was called to testify that Mr. Nix had previously told him this. That is completely inconsistent with the government's representation that the I would like to briefly discuss the violation of the rule of completeness. What happened in this case, Your Honors, is that the government was allowed to play snippets of an hour-long interview between my client and two FBI agents. We twice insisted that Judge Sands allow the government—allow the jury to hear the entire interview. Now you're raising an issue that was not raised in opening. I didn't have an opportunity. I didn't get to it. No, it's in your brief. Okay. Judge Prywell. I mean, the government's not had an opportunity—can't rebut something you didn't, you know, an argument you didn't make in the opening. Thank you. I would just direct the Court about the complaint. It's Rule 11 of the Federal Rules of Civil Procedure. If an individual sets forth a pleading, it's set forth to the best of his knowledge and belief. And so there's the implicit representation that the litigant— Our case law says that's a presumption, that it's your statement. Yes, sir. But what we're talking about here is an allegation in a civil lawsuit. It's admissibility in a criminal case. I appreciate the Court— It's used for impeachment purposes. Yes, sir. Thank you, Judge Prywell. Mr. Duro, you were court-appointed, and we appreciate you accepting the appointment and being here to discharge that responsibility today, honorably. Thank you, Judge Prywell. Thank you, Your Honors.